No. **91-122**

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1991**

IN RE THE MARRIAGE OF LANA KAY WILSON FRONK,

       Petitioner and Appellant,

   -vs-

ROBERT LEO WILSON,

       Respondent and Respondent.

APPEAL FROM:   District Court of the Fifteenth Judicial District,
In and for the County of Roosevelt,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Carol C. Johns, Attorney at Law, Wolf Point, Montana.

     For Respondent:

          David L. Irving, Attorney at Law, Glasgow, Montana.

FILED

OCT 29 1991

Filed: *Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on briefs:  September 12, **1991**

Decided:  October 29, 1991

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Lana Kay Wilson Fronk appeals from an order of the District Court of the Fifteenth Judicial District, Roosevelt County, which increased both the child support obligation and the visitation rights of her daughter's father, Robert Leo Wilson. We affirm in part and reverse in part.

The issues are:

1. Did the trial court abuse its discretion in failing to set aside the default on the counterclaim?

2. Did the court err in setting Wilson's modified child support obligation?

3. Should the modification of child support be made retroactive to the date of notice of the motion for modification?

4. Did the court err in adopting Wilson's proposed findings, conclusions and order?

5. Did the court err in ordering that Wilson may claim the parties' child as a dependent for income tax purposes?

6. Did the court err in ordering that the parties must each pay their own attorney fees?

The parties' marriage was dissolved in 1981, when their daughter Katie Lynn Wilson was one year old. The mother, Lana Kay Wilson Fronk (Fronk), was given sole custody of the daughter, with the father, Robert Leo Wilson (Wilson) to have "reasonable rights of visitation" subject to an injunction pending a psychiatric

evaluation.  The injunction was lifted in **1983.**  Wilson was ordered to pay **$150** per month in child support and was made responsible for the daughter's medical, dental, and optometrical expenses.  Both parties have since remarried.  At the time of these proceedings, Fronk lived in Utah and Wilson lived in Alaska.

In January **1990,** Fronk filed a petition for modification of the decree of dissolution, requesting that the amount and duration of child support payments be increased.  Wilson filed an answer and counterclaim requesting that visitation be specified, that each party be responsible for his or her own attorney fees, and that he be allowed to take the income tax deduction for the child.

Following discovery, Fronk noticed a hearing on child support for October **2, 1990.**  On September **27, 1990,** on Wilson's motion, the court continued that hearing indefinitely.  On the same day, and also on Wilson's motion, the court entered a default judgment for Wilson on his counterclaim.

Fronk moved to set aside the default judgment.  The court heard argument on that motion at a November **7, 1990,** telephone conference at which the support issues were also argued.

On January **18, 1991,** the court entered its findings, conclusions, and "decree of **dissolution."**  The court increased Wilson's support obligation to **$241** per month until the child is twelve years old and to **$298** per month thereafter until she is emancipated.  It made no statement finding Fronk properly in

3

default or denying her motion to have the default set aside, but it adopted Wilson's proposals as to the issues raised in the counterclaim. It set Wilson's visitation rights as, at a minimum, one visit per year at his residence for at least eight consecutive weeks during the summer. The court also ordered that Wilson shall be allowed to claim his daughter as a dependent for income tax purposes and that each party shall pay his or her own attorney fees incurred in this action.

## I

Did the trial court abuse its discretion in failing to set aside the default on the counterclaim?

It is undisputed that Fronk did not file an answer to Wilson's counterclaim. The grounds upon which she moved to set aside the default judgment were that it was not entered in accordance with the requirements of Rule 55(b)(2), M.R.Civ.P.; that her attorney had requested of Wilson's attorney that the issue of child support be resolved before the issue of visitation was addressed: and that Wilson's attorney was aware of Fronk's objections to the terms requested in the counterclaim. When the motion to set aside the default was argued in the November 7, 1990, telephone hearing, the position of Fronk and her counsel was that the issue was "a matter of law and a question of procedure." The District Court agreed, and the merits of the counterclaim were not argued.

Rule 55(b)(2), M.R.Civ.P., provides that

4

> [i]f the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least **3** days prior to the hearing on such application.

In September of **1990,** Fronk's attorney was served with both the application for entry of default and the default entered by the district court clerk. In November of **1990,** a hearing was held which included argument on setting aside the default. No judgment was entered on the counterclaim, the subject of the default, until January **18, 1991.** We conclude that no violation of Rule 55(b)(2), M.R.Civ.P., has been shown.

Rule 55(c), M.R.Civ.P., provides that for "good cause" shown, a district court may set aside an entry of default. To determine the existence of good cause, courts should consider whether the default was willful, whether the party on whose behalf the default was entered would be prejudiced if the default were set aside, and whether the party against whom the default was entered has presented a meritorious defense to the claims against it. Cribb v. Matlock Communications, Inc. **(1989), 236** Mont. **27, 30, 768** P.2d **337, 339.** Appellate courts reverse refusals to set aside entries of default on a showing of slight abuse of discretion by the lower court. <u>Cribb</u>, **768** P.2d at **340.**

There was no evidence before the District Court that Fronk's default was willful. The prejudice to Wilson if the default is set

5

aside is limited because visitation is to occur only once a year, in the summer months.  As a result of her position that the entry of default should be set aside as a procedural matter, Fronk did not present all of her arguments on the counterclaim prior to entry of judgment.  However, she did submit affidavits alleging physical and sexual abuse, in support of her position on the issue of visitation.  After consideration of the factors set forth in Cribb, we conclude that the lower court abused its discretion in failing to set aside the default.  We reverse on this issue and remand for further proceedings before the District Court.

Issues 5 and 6 relate to other parts of the counterclaim. Because we reverse on the failure to set aside the default on the counterclaim, those issues, too, must be reconsidered on remand. Therefore, we will not discuss Issues 5 and 6.

## II

Did the court err in setting Wilson's modified child support obligation?

Wilson concedes Fronk's point that a clerical error was made in calculating his net available resources to be considered in setting the amount of child support.  He recalculates his net amount of available resources as $31,489, resulting in a monthly support obligation of $356.88 until the child reaches twelve years of age and $440.85 thereafter until she is emancipated.  Both parties point out that the District Court can correct the miscal-

culation as a clerical mistake pursuant to Rule 60(a), M.R.Civ.P. We agree. This recalculation should be retroactive to the date of the judgment from which this appeal is taken and should be included in the District Court's findings and conclusions on remand.

Fronk asserts that, in calculating Wilson's child support obligation, the District Court permitted him an excessive deduction for the cost of living in Alaska. The Montana child support guidelines do not address a cost of living adjustment. But, as Wilson points out, this Court has stated that "[i]n appropriate cases, where there is evidence presented that shows there is substantial disparity between the value of the dollar in different locales, the Court may in equity need to make appropriate adjustments." In re Marriage of Mitchell (1987), 229 Mont. 242, 249-50, 746 P.2d 598, 603. We hold that consideration of such a factor is not in itself an abuse of discretion.

The record indicates that the American Chamber of Commerce Researchers Association (ACCRA) Cost of Living Index, which was introduced into evidence by Wilson and upon which the court based its cost of living adjustment, was obtained from the State of Montana's Census and Economic Information Center. We hold that the ACCRA index is a public record admissible into evidence under Rule 803(8), M.R.Evid. Additionally, Wilson gave several examples of how he is personally affected by the high cost of living in Alaska. We hold that the allowance of a 26 percent cost of living adjust-

7

ment calculated from the ACCRA Cost of Living Index does not represent reversible error.

Fronk also contends that the District Court erred in allowing Wilson a deduction for federal income tax of **$4,420**, the amount withheld from his paycheck. She argues that the amount of his annual income tax refund should be subtracted from the amount allowed as a deduction. The Montana child support guidelines require income to be calculated on the basis of disposable income. The District Court is in the best position to determine whether tax returns or payroll checks accurately reflect disposable income. We conclude that no reversible error has been shown.

Finally, Fronk argues that if the District Court considers Wilson's new family when determining his obligation to support his first child, then it should also consider his new wife's income and contributions. However, the District Court's findings do not indicate that Wilson's financial responsibility to support his new family was used as a separate factor in calculating his child support obligation.

### III

Should the modification of child support be made retroactive to the date of notice of the motion for modification?

Fronk points out that the District Court has the power, under § 40-4-208(1), MCA, to modify the amount of any child support installments accruing subsequent to actual notice of the motion for

modification. She argues that, due to her financial need, the delays in these proceedings caused by Wilson, and the "unconscionably" low child support prior to modification, she is entitled to modified child support retroactive to the date Wilson was served with the petition for modification. Her proposed findings, conclusions, and order reflected that position and provided that the increased child support would be effective February 5, 1990.

Section 40-4-208(1), MCA, does not mandate that modifications of child support must be made retroactive to the date of notice of the motion for modification. Rather, it sets a limit as of that date. We hold that no abuse of discretion has been shown in the District Court's prospective modification of the amount of child support.

                              IV

Did the court err in adopting Wilson's proposed findings, conclusions and order?

Fronk argues that the record does not support the District Court's verbatim adoption of Wilson's proposed findings, conclusions, and order. To the extent that the court's judgment is reversed under Issue 1 above, this issue is moot.

As to the remaining findings, Fronk objects to finding #21:

> [Wilson] testified that a college education is a privilege, not a right or endowment, and that any payments he might make would be based upon a decision to make a personal gift to his child based upon meritorious achievement and the child's ability and willingness to

9

> attend college, rather than required as if a "reward"
> simply because [Fronk] and [Wilson] were divorced.

Wilson did not so testify. While we must caution the District Court to use discretion in adopting proposed findings, we hold that the presence of the above finding does not constitute reversible error. We note that under § 40-4-208(5), MCA, any provision for child support following the child's emancipation or graduation from high school is the exception, not the norm.

Affirmed as to the issue of child support except for correction of the clerical error in calculating the amount of that support, and reversed and remanded as to the issues raised in Wilson's counterclaim.

_____
Chief Justice

We concur:

_____
_____
_____
_____
_____
_____
Justices

October 29, 1991

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


CAROL C. JOHNS
Attorney at Law
P.O. Box 995
Wolf Point, MT  59201

DAVID L. IRVING
Attorney at Law
Drawer B
Glasgow, MT  59230

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
         Deputy